UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Neil Carrick,

          Plaintiff,       Case No. 15-cv-10108
                                    Hon. Judith E. Levy
v.                                    Mag. Judge Mona K. Majzoub

Rick Snyder and Bill Schuette,

          Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS [15]**

On January 12, 2015, plaintiff Neil Carrick, then *pro se*, filed suit against defendants Governor Rick Snyder and Attorney General Bill Schuette of Michigan, claiming that Michigan's statutes providing for civil and criminal penalties against religious officials who "solemnize" marriages not permitted under Michigan law, including same-sex and plural marriages, violate his rights under the First Amendment of the Constitution of the United States of America. (Dkt. 1.) This case was stayed pending the outcome of *Obergefell v. Hodges*, ___ U.S. ____, 135 S.Ct. 2584 (2015). Following the issuance of that decision, defendants

filed a motion to dismiss this case for lack of standing (Dkt. 15), which is now pending.

On December 8, 2015, the Court requested supplemental briefing from the parties regarding the following issue: whether "Michigan's laws permitting civil and criminal sanctions of persons who improperly solemnize marriages authorize the state to impose those sanctions when the ceremony is purely private in nature, and not intended to have legal effect[.]" (Dkt. 24 at 4.) On January 8, 2016, the parties filed their supplemental briefs. (Dkts. 25, 26.)

### I. Background

Plaintiff states that he is an ordained minister pastoring a new and developing congregation in Wayne County, Michigan. (Dkt. 1 at 4.) He alleges that Michigan's marriage laws, namely M.C.L. § 551.106 (imposing civil and criminal penalties) and § 551.14 (imposing civil penalties) violate his First Amendment rights of free exercise of religion and freedom of association. (Id. at 7-9.) They do so, he argues, because he could face civil and criminal penalties for performing private religious marriage ceremonies for same-sex couples and plural relationships of more than two people, even if those people are not

seeking to have their marriage officially recognized by the state of Michigan via a marriage license. He further argues that he could also face these penalties if he performed a purely private religious ceremony for a man and woman seeking to be "married" without state sanction, because one might lose public benefits or face some other undesired consequence if he or she were legally married.

Plaintiff does not allege in his complaint that he has sought or is seeking to perform any marriage ceremony in violation of either of the Michigan statutes he challenges. He also does not allege that defendants have enforced or threatened to enforce any civil or criminal sanction against him or anyone he is aware of related to these statutes or any others. Defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Dkt. 15), arguing that plaintiff's claims related to same-sex marriages are moot, that plaintiff lacks standing to bring his claims, and that he has failed to state a claim upon which relief can be granted. (*See generally* id.)

## II. Legal Standard

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to

3

the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When deciding a motion to dismiss that challenges the sufficiency of the complaint under Fed. R. Civ. P. 12(b)(1), the Court must again construe the pleadings in the light most favorable to the plaintiff. *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

### III. Analysis

Michigan defines marriage as a civil contract, and states that "[s]o far as its validity in law is concerned, marriage is a civil contract . . . , to which the consent of parties capable in law of contracting is essential. Consent alone is not enough to effectuate a legal marriage on and after January 1, 1957. Consent shall be followed by obtaining a license . . .

and solemnization as authorized by sections 7 to 18 of this chapter." M.C.L. § 551.2.

To obtain a valid legal marriage in Michigan, "[i]t shall be necessary for all parties intending to be married to obtain a marriage license from the county clerk of the county in which either [party] resides, and to deliver the said license to the clergyman or magistrate who is to officiate, before the marriage can be performed." M.C.L. § 551.101. "In the solemnization of marriage, no particular form shall be required, except that the parties shall solemnly declare, in the presence of the person solemnizing the marriage and the attending witnesses, that they take each other as [spouses]; and in every case, there shall be at least 2 witnesses, besides the person solemnizing the marriage, present at the ceremony." M.C.L. § 551.9.

Michigan also provides sanctions for those authorized to solemnize marriages who attempt to do so without following the legal requirements outlined above. For instance, "[a]ny clergyman or magistrate who shall join together in marriage parties who have not delivered to him a properly issued license, as provided for in this act, or who shall violate any of the provisions of this act, shall be adjudged

5

guilty of a misdemeanor, and shall be punished by a fine of 100 dollars, or in default of payment thereof, by imprisonment in the county jail for a term of 90 days." M.C.L. § 551.106. Likewise, "[i]f a person authorized to solemnize marriages knowingly joins any persons in marriage contrary to the provisions of this chapter, he or she shall forfeit for each offense a sum not exceeding $500.00." M.C.L. § 551.14.

In Michigan, therefore, marriage is a civil contract that requires both a valid license and the "solemnization" of the marriage before the license is considered valid. Solemnization renders a marriage license valid through performance of a ceremony in front of at least two witnesses. That act may be performed by secular or religious officials. M.C.L. § 551.7.

Plaintiff argues that these laws prohibit or discourage him from performing private religious marriage ceremonies, including for those in same-sex and plural relationships, because he might face civil and criminal penalties for doing so. He further argues that "[m]arriage is the ultimate embodiment of celebrating and worshipping God and God's commandments" and that these laws "chill to the core any servant of God trying to follow his Maker's commandments to celebrate his name

6

in ceremony and practice." (Dkt. 22 at 8.) Defendants respond that plaintiff's arguments regarding same-sex marriage are moot following the Supreme Court's decision in *Obergefell* declaring marriage a fundamental right between people of the same sex, that plaintiff lacks standing to bring his claims, and that plaintiff has failed to state a claim on which relief could be granted. (*See generally* Dkts. 15, 23.)

### A. Timeliness of Defendants' Motion

Plaintiff first argues that defendants' motion to dismiss is untimely and improperly before the Court, because it was filed before defendants' answer. Under Fed. R. Civ. P. 12(b), "[a] motion asserting any [defense listed in Rule 12(b)] must be made before pleading if a responsive pleading is allowed." This motion was both timely and properly filed.

### B. Plaintiff's Standing

Because a lack of standing on plaintiff's part would be fatal to all of his claims, the Court will address this argument first.

To establish standing, a plaintiff must show: 1) he has suffered an "injury in fact," which is an invasion of a legally protected interest that is concrete and particularized and actual and imminent, rather than

7

conjectural or hypothetical; 2) there is a causal connection between the injury and conduct fairly traceable to the challenged action of the defendant; and 3) it is likely, rather than speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (further citations omitted).

The Court asked the parties to provide supplemental briefing on whether and how they contend that Michigan's marriage laws reach the purely private religious ceremonies plaintiff contends may be subject to civil and criminal penalties. Plaintiff responded to this question in the affirmative. (Dkt. 26.) However, in doing so, plaintiff largely relies on an 1829 New Jersey case, *Pearson v. Howey*, 11 N.J.L. 12 (N.J. Sup. Ct. 1829), and statements issued by various Christian denominations regarding whether clergy affiliated with those religions should generally perform marriage ceremonies without marriage licenses.

Defendants declined to answer the question the Court posed in its order for supplemental briefing. They did so for three reasons. First, defendants argue that the Court cannot decide the issue, because plaintiff lacks standing to bring the suit. (Dkt. 25 at 6.) Second, defendants argue that they "cannot definitively answer the question" as

8

"only the Court can offer a definitive answer." (Dkt. 25 at 7-8.) Third, defendants argue that the Court does not need to answer the question in order to dismiss this complaint for plaintiff's lack of standing. (Id. at 8.)

As a threshold matter, the Court's order was meant to give the parties an opportunity to explore whether plaintiff could possibly have standing under a plain reading of the applicable statutes, and whether plaintiff could possibly state a claim under the applicable laws—the very grounds set forth in defendants' motion to dismiss. If plaintiff cannot make a cognizable argument that injury could possibly arise from the statute, his lack of standing and failure to state a claim become absolutely clear.

Suppose, for instance, that a plaintiff sued the state of Michigan under the theory that defendants are threatening to impose civil and criminal sanctions under M.C.L. § 19.131, which provides official names for the state transportation and treasury buildings, because plaintiff refuses to use those names in his communications with the state. What defendants would have the Court do is avoid reading the statute altogether in order to determine whether plaintiff alleged an "actual or

9

imminent" harm, despite the fact that the statute referenced above carries with it no civil or criminal penalties for that plaintiff's behavior. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (further citation omitted).

Not only does that argument not make sense as a matter of careful judicial consideration of the cases and controversies before a court, it would make arguing against the standing of plaintiffs *harder* for all defendants, particularly in the case of the allegation of imminent, rather than actual, harms. That is particularly so where the plaintiff's entire argument is premised on alleged statutory authority to impose civil and criminal penalties for certain behavior.

To the extent that defendants argue that the Court would exercise "hypothetical jurisdiction" and "pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so" by understanding the statutes at issue in this case, defendants are wrong. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998). In *Steel Co.*, the plaintiffs, an environmental organization, sued on behalf of itself and its members, alleging that it suffered an injury by virtue of being deprived of information reported under the

Emergency Planning and Community Right-To-Know Act of 1986 ("EPCRA"). *Id.* at 104. The Supreme Court noted that it had "not had occasion to decide whether being deprived of information that is supposed to be disclosed under EPCRA . . . is a concrete injury in fact that satisfies Article III. *Id.* at 105. The Court, however, "assum[ed] injury in fact" from a violation of duties arising under statute, and determined that the plaintiffs lacked standing on redressability grounds. *Id.*

In short, the Supreme Court acknowledged that, in a case based on injury arising from or related to a statute, reading and understanding the requirements of the statute may be necessary to a standing analysis. (*Id.*; *see also id.* at 86-88 (reviewing relevant provisions of the statute).) The question of law before the Court in this case, which defendants raised in their motion to dismiss, is whether plaintiff has alleged a cognizable injury in fact from the actual or imminent imposition of civil and criminal penalties under certain Michigan statutes. Accordingly, the Court, as a matter of course, must review the statutes as part of its determination whether plaintiff has alleged such an injury in fact.

Defendants argue that they cannot interpret the statute in this case. In virtually every lawsuit, parties debate the proper meaning and interpretation of the law based on reading the statute, citation of case law, and discussion of other relevant legal sources. When the Court asks a party to provide argument on the proper interpretation of a law, a response that the party cannot do so because its argument is not the "final interpretation of the law" is unhelpful. Where appropriate, the Court will interpret the law, and in an adversarial system such as our own, understanding the parties' interpretation of the law is one important step in that process.

Plaintiff also responded to the Court's order for supplemental briefing. (Dkt. 26.) [1]

---

[1] Plaintiff's proposed method of statutory construction will not be applied in this case, or in any other. Plaintiff suggests that the Court should look to "each word in the statute" and next at "the interaction and combination of the complete word passage," followed by "how the general population, especially religious organizations in the instant case, interpret and conform to the law," and finally, "why the general population, especially religious bodies in the instant case, conforms to the law." (Dkt. 26 at 5.)

This is not how statutory construction should be undertaken. Rather, courts are to generally look at the plain language of the statute, and then consider other persuasive evidence if it exists, with a particular eye toward the circumstances of enactment and intent of the legislators in enacting the relevant legislation. *Watt v. Alaska*, 451 U.S. 259, 266 (1981).

Based on the foregoing, the Court cannot make a standing determination based on whether the hypothetical marriage ceremonies plaintiff refers to in his complaint are or are not clearly proscribed by the relevant Michigan statutes. However, on review of the complaint, plaintiff lacks standing to assert any of his claims, because he has "not alleged any actual intent to [perform] the conduct proscribed by" the statute. *Glenn v. Holder*, 690 F.3d 417, 421 (6th Cir. 2012). Even inasmuch as plaintiff has alleged that the statute is overbroad, he has not alleged that a "substantial number of instances exist in which the law cannot be applied constitutionally." *Richland Bookmart, Inc. v. Knox Cnty.*, 555 F.3d 512, 532 (6th Cir. 2009.)

Instead, plaintiff asserts an entirely hypothetical injury where he or unspecified others will not marry unspecified couples or groups because they might face hypothetical penalties from the state of Michigan. The injury plaintiff alleges requires the Court to conjecture that at least four events that are not alleged to have occurred or to be imminently occurring will, in fact, occur: 1) that a couple will seek to have a private religious marriage ceremony without a marriage license; 2) that plaintiff or some other person will seek to perform the ceremony;

13

and either 3) plaintiff or some other person will not perform the ceremony or 4) plaintiff or some other person will perform the ceremony and face civil or criminal sanction from the state of Michigan.

None of plaintiff's allegations constitute a concrete, particularized invasion of a legally protected interest. Plaintiff has not provided any concrete details of an actual or imminent act that would allegedly violate any Michigan statute. Further, plaintiff has alleged no actual or imminent injury in fact arising from the performance of a marriage ceremony. A plaintiff arguing that he is injured by potential legal sanction for the commission of an act cannot allege a "subjective chill . . . [as] an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). Plaintiff must allege some "express (or even implied) threat of official enforcement" of the law at issue. *Glenn*, 690 F.3d at 424.

Instead, plaintiff argues that defendants have, in the past, attempted to enforce *other* laws governing personal relationships through civil and criminal penalties. (Dkt. 26 at 11-12 (citing *Muller v. Muller*, No. 259271, 2005 WL 2810399 (Mich. Ct. App. Oct. 27, 2005);

14

*White v. White*, No. 293976, 2010 WL 4774435 (Mich. Ct. App. Nov. 23, 2010).) The enforcement of different laws against different parties is insufficient to establish that plaintiff has or will imminently suffer an injury from the enforcement of the laws at issue in this case.

Because plaintiff has failed to allege an injury in fact, he lacks standing to assert any of the claims in his complaint. Accordingly, his claims are dismissed with prejudice.

### C. Plaintiff's Request to Amend

At the conclusion of his response to defendants' motion to dismiss, plaintiff "requests leave to amend his Pro Per complaint to address the aforementioned issues raised in Defendant's motion based on Defendant's failure to appropriately answer the original Complaint." (Dkt. 22 at 17.)

To the extent that plaintiff references what would be included in his amended complaint, he references only legal arguments he would make regarding the meaning of Michigan statutes. (Id. at 7, 11.) Those arguments would not cure plaintiff's lack of standing. Furthermore, plaintiff appears to argue that he should be granted leave to amend the complaint because defendants filed a motion to dismiss rather than

15

answering the complaint. However, defendants' motion was validly filed, and the filing of a dispositive motion under Rule 12(b) does not, on its own, entitle the plaintiff to an amendment of his complaint.

## IV. Conclusion

For the reasons set forth above, it is hereby ordered that:

Defendant's motion to dismiss (Dkt. 15) is GRANTED; and

This case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: February 10, 2016  s/Judith E. Levy
Ann Arbor, Michigan  JUDITH E. LEVY
 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 10, 2016.

 s/Felicia M. Moses
 FELICIA M. MOSES
 Case Manager